Good morning, Your Honor. I don't want to reserve any time for a vote. Okay. You can proceed. Good morning, Your Honor. May it please the Court, Marco Garzón for the petitioner, Patricia Zamora Flores and her minor children. The lead petitioner in this case was the victim of constant domestic violence at the hands of her common-law spouse with whom the petitioner had a long-term relationship since she was a minor until her late 20s. The petitioner in this particular case established a nexus between the lead petitioner's past harm and her long-term relationship with her former common-law partner. In this particular case, the fact that the petitioner and the abuser had a very long relationship is a determinant factor to show that one of the reasons that motivated the constant harm was precisely the existence of that familial relationship. Mr. Garzón, the board held that the respondent did not provide any testimonial or documentary evidence to support this argument. And so you've just said it relied on this long-term relationship. Where's the best place we should look to find the testimonial or documentary evidence of nexus that you're asserting here? We believe or I believe that that is a particular issue that is coming out of precisely a long-term relationship between the two. But why would that compel us under the standard of review to find that the nexus here was due to that relationship? I mean, I hope you understand we have lots of cases where there is a long-term relationship. And all too sadly, we also have lots of cases involving domestic violence. But for purposes of the immigration and asylum claim, we're looking for the evidence that would compel us to go the other way than the agency. Do you have anything specific other than the existence of the relationship? Your Honor, I think that in this particular case, there were moments where there was no harm to the petitioner. And that particular evidence comes from the testimony throughout the hearing that she had in front of the immigration court, in which she stated that precisely when he was high, when he was under the influence of the drugs, that's when most of the harm occurred. But also is the fact that when the former spouse moved to Ensenada, she followed. There were times where there were no abuse. There were times when the relationship was good. There were no incidents of violence. But that fact pattern or that pattern that she testified to, that it was a constant relationship, that's what gave us an idea that precisely the fact that they had a deep relationship, that's what gave us that nexus in the sense that a reasonable approach or a reasonable analysis of that specific issue gave us the sense that the attacker or the former spouse, one of the reasons why he was able to take advantage or was able to harm her is precisely because she felt comfortable that she was there always. She was a constant presence in his life, and that's why that's established the nexus. Counsel, can I follow up? There is some evidence in the record that she refused to have sex with him and he would rape her. So to Judge Johnstone's question, do you believe that that's a motive? That, in other words, that he abused her, he raped her repeatedly because she refused to have sex with him? Do you believe that that's a motive? I believe so, Your Honor. And in particular, those specific instances show that he felt so entitled, so comfortable to control her in that relationship that that refusal is precisely a motive for the abuse, Your Honor. But did that – there is a more specific and more troubling declaration in the record. Did that declaration come in – did those facts come in as part of the asylum process or was it part of the U visa application? I guess I share Judge Ferrer's concern about those allegations. Was that before the agency for purposes of asylum? And if so, where would I find that in the record? Your Honor, the declaration – there's two declarations on the record. One is the declaration that was presented at the time that she had the hearing in front of the immigration judge. And that's when she testified that the rapes and the sexual abuse. The other declaration that was submitted in this record, it was part of the motion to remand the case. And it's my understanding that that declaration was precisely to address the U visa. But that was – that abuse, unfortunately, was at the hands of a different person. That abuse was here in the United States. So the one declaration that is relevant for this particular case is the one that was submitted in front of the immigration judge back in 2019. Do you have a cite with respect to the first declaration as to where we would locate or in the testimony the facts of sexual assault and those sorts of assertions of power over her? The declaration – that declaration is in the record on 228 to 232. And in that declaration, there's not really a specific statement as to the motivation of the attacker, unfortunately. That is just a declaration that describes the whole life and what happened in Mexico, Your Honor. Would you feel – I'm not sure that it – how much it pertains to this case. But do you have an update on the status of the petitioner's U visa application? Yes, Your Honor. Actually, we recently learned that the immigration service reviewed the application. And they issue a non-bona fide letter in this case, meaning that at a first review of the U visa, they don't believe that she qualifies for it. But that's something that could change at a later time when they do a full review of the record. But that's the latest update that I received from the council representing petitioner and her money children in that case, Your Honor. The other issue that I want to raise, Your Honor, is I think that the board decision misconstrues the burden of the petitioner must meet to show inability or unwillingness to protect them. The fact that the government might be willing to protect the petitioner or this petitioner in particular does not support a finding that the authorities in Mexico are able to protect her. And this assertion is supported on the conditions and the documents submitted in this case, in particular the inability of the Mexican authorities to hold the petitioner's former partner accountable for what he did to her. And this is in specific is the statement or this testimony of the petitioner when she said, he told me that his boss or his co-worker bribed the police and that's what he was released. So that pronoun is willingness and unable to protect. I think in this particular case, the problematic issue is that the authorities in Mexico are unable to protect her. Well, I think I think the issue there, though, is that the BIA found that your client didn't provide any independent documentary evidence to to to back up her claims. And so the BIA, the IJ essentially said, we, you know, we we just don't have any reason to, I think, to know that that happened. And so what do we do with that? You know, I think that goes to the credibility of the witness. The board or the IJ never found that she was not credible. And she was specific as to state for first hand knowledge that the attacker, her former spouse, told her, this is why I was released. This is what happened. So I think that we can reasonably rely on her testimony, especially because neither the IJ nor the board found her not credible. Counsel, can you clarify in the record? I couldn't tell whether she reported the abuse five times in person or five times total with a subset of that being in person. I couldn't quite make out the total number of times that she reported it and the number of times that she did that in person. From the testimony, my understanding and my analysis is that he did five times before the abuse in person because she said that the police, she talked to the police. She had an encounter with the police. In fact, he was arrested by the police. So my understanding from the record is that she did that personally five times at least, Your Honor. Do either of you have any other questions? No. OK, thank you very much. Thank you. And you do have some time left over. So if you determine that you want to have rebuttal time, then you can let me know that. Thank you. OK, thank you.  Good morning, and may it please the court. Jennifer Williams for the attorney general. The issues before this court that haven't been waived or that weren't that the board explicitly decided not to decide are the denial of asylum and withholding of removal on two separate independently dispositive grounds. Nexus and the finding that the Mexican government was not unable or unwilling to control Christian. Either of those findings is dispositive of the denial of asylum and withholding of removal, which means that the court can affirm the decision of the agency on either ground. I'll start with Nexus. The. The standard is whether. The. In this case, the alleged particular social groups were a reason for Christian's abuse of the petitioner. And in this case, the record evidence does not compel that conclusion because the only reason she gave during her testimony and in her declaration for that abuse was Christian's abuse of drugs. And it's important. Also, let me stop you. Did she ever really say that that was the reason? I mean, she said that he was always high. But did she ever say he beat me because of the drugs? I believe in her. Well, to start, she didn't provide direct testimony in this case. And so the record evidence, it is what it is. But there's her declaration. And then there's some questions that were asked by government counsel, the immigration judge, and I believe her counsel on redirect. So what there is is her statement during her testimony that he was high. He was always high. But then there's her declaration. And in her declaration, she specifically states that he moved to Ensenada. She followed him to Ensenada. And there was about a month when things were good. And then she says he started using drugs again and the abuse started. No, no counsel. That's not what the declaration says. Declaration says he started using drugs. Not he started using drugs again. So that's the first mention in the declaration of drugs. Two years after the miscarriage incident and the Christmas incident as well where he left her bloodied. Yes, but she testified that the abuse always occurred when he was high. You just said. With no temporal limitation on that testimony. You said declaration 12, paragraph 12, and I have it right here. He started using drugs. He didn't say he started using drugs again. And in fact, isn't that what the IJ got wrong? When he said. In part of his order, it was only after he began using drugs again. That the abuse began again as well. And he cited paragraph 12. So he just got it wrong. With respect, I would argue that the declaration and the testimony read in conjunction with each other where she specifically states in her testimony. He was high. He was always high. Read with that statement in the declaration. He started using drugs that the evidence doesn't come again. The standard of review is whether the evidence compels the conclusion. That evidence is substantial evidence in support of the immigration judges. Determinate factual determination that every time he abused her. He was high and that that statement in the declaration is that he did not use drugs. He did not abuse drugs for the first month in Ensenada. And then he started using drugs. Well, Miss Williams, I do think that. I mean, I find it. I agree with Judge. It's hard. It's hard reading paragraph 12 of the declaration in combination, I believe, with her testimony. That at least the initial instances of abuse were not claimed to be motivated by drugs. If if we find that the. Relevant evidence at least compels us to find that there were earlier that there was earlier abuse in which drugs may not have been implicated. What's your response to your friend's suggestion that we have a domestic relationship in which violence is occurring in which the partner is is abusing petitioner in that way? And that should be enough for us to find nexus. I would answer that that that is not the factual finding that was made by the immigration judge, which the court reviews for compelling evidence. The agency found differently to found on this record that based on her testimony, her specific testimony that he was high, he was always high. But counsel, wasn't that in response to a question about being drunk when mistreated? So essentially she was correcting the question. She essentially was saying, no, he was high. And she said he was always high, but that didn't refer either to a cause or to a time frame. Well. This the immigration judge made different factual findings, and the question is whether the evidence in the record compels a different reading of these two statements in light of the fact that this is all that there is in the record. The fact is that in the testimony, there's her statement. He was high and it didn't she didn't stop there. She said he was always high. And then she has this statement in her declaration that he treated her well. I mean, whatever that sentence, he started using drugs. It is clear from what she said previously that when he wasn't using drugs in Ensenada, he treated her well. So those two statements combined, our position is the evidence doesn't compel a conclusion contrary to the immigration judge. Counsel, I assume you reviewed the I-589, the asylum application that you filed under penalty of perjury? Yes. Okay. And section, I think it's 2A. It says, have you or your family or close friends or colleagues ever experienced harm or mistreatment or threats in the past by anyone? She answered yes. And then there's several questions about what happened, when, who and why you believe the harm or mistreatment or threats occurred. And she answered for about four years. I was mistreated by the father of my children on different occasions. He beat me so hard that I had to go to the hospital. Detailed declaration to follow. Did she mention drugs there or anything about drugs as being the reason? No, she didn't. But she made it clear that she would further explicate her claim in her detailed declaration, which does mention drugs. And in her testimony, which also mentioned drugs. And so the asylum application on its own, it has to be read in conjunction with the evidence she later provided. And on this record, the evidence is one, basically one sentence in her testimony that he was always high. And a statement in her declaration that. Our position is in conjunction with that testimony that it's not that the evidence doesn't compel the conclusion that he started using drugs for the first time after they were in Ensenada for a month. She said in her testimony, he was always high when he abused me. And it's clear from the declaration that at a minimum during the month in Ensenada when she was there and he wasn't using drugs. He treated her well. So let's let's take that and just dive a little deeper. If if we assume that drugs was one reason. Why? Why aren't we allowed to find that that the record compels us to find that her relationship with her partner was a reason. They can be and I didn't see any analysis of that. She was found sufficiently credible. And the summary of the record is. Is kind of jaw dropping. I mean. She was pushed to the ground. Causing her to miscarry. She was repeatedly beaten and taken to the hospital. She was threatened at night point. She was kept isolated. He refused to let her leave the house. He didn't give her money for food. He raped her. He took her children and he told her that he would kill her if she left. You don't believe that that compels us to find that a reason. Was her domestic relationship. Well, I just want to first clarify that the the only declaration that's relevant is the one about Christian. Not not the you visa. No, but some of that is in is I don't I'm not sure it all is. But anyway, whatever is in her declaration about about Christian's abuse. The agency recognized everybody recognizes that the harm to which she was subjected rises is abuse that it was terrible. But the question is whether it occurred on account of her protected ground. And the fact that she was in a relationship with him in this case on the facts of this record. I mean, yes, she was in a relationship with him. But that doesn't mean that was a reason for the abuse because of her statements. That the reason for the abuse was his abuse of drugs. Again, she didn't say that that was the reason but you're inferring that. Well, the immigration, the agency looked at the facts in the record. And those are the factual findings that the IJ made as affirmed by the board. And under this court's standard of review, the question is whether the evidence in the record compels a contrary conclusion. The second ground relied on if the court has no more questions about nexus, the second ground relied on that is independently dispositive is whether she met her burden of showing that the Mexican government and the police were unable or unwilling to control Christian. As we argue in our brief, she basically conceded that they were willing to do so, but argues that they were unable to do so. And the only evidence in this record is the declaration and her what limited testimony there is. And those facts simply don't compel the conclusion that the Mexican police were unable to control Christian. There are questions on this record that are not answered. It is unclear exactly how many times she went to the police. It's unclear how many times the police arrested Christian. It's clear that they did so at least once, but there's a suggestion in her testimony that they did so more than once. It's unclear whether, assuming they arrested him more than once, they released him every time because the boss paid a bribe or whether that only happened once. The record doesn't contain the police reports, and she didn't testify as to what she told the police on each occasion. So the only evidence in the record is her statement that Christian told her that the police released him because his boss paid a bribe. And even though she was found credible, he may have actually told her that, but that doesn't mean that's what actually happened. There's no independent evidence, again, of any of these facts. And it's important that she bears the burden of proof. She has to show that the Mexican police were unable to control Christian. And on this record, the evidence doesn't compel the conclusion that she met that burden. Thank you very much. Thank you. And Mr. Carson, did you want to use any more of your time or no? OK, thank you. Thank you both very much for your helpful arguments in this case. This case is now submitted. Thank you.
judges: THOMAS, JOHNSTONE, Vera